## KHOURY v. FIDELITY & CASUALTY CO.
### No. 1190.

Court of Appeal of Louisiana. First Circuit.
June 30, 1933.

Lewis & Williamson, of Lake Charles, for appellant.

C. R. Liskow, of Lake Charles, for appellee.

MOUTON, Judge.

In his petition, plaintiff alleges that, as employee of the Union Sulphur Company rendering services on one of its drilling rigs, and while handling an iron drill collar, he sustained a severe injury in his stomach on May 17, 1932, causing a hernia.

This suit was brought for compensation for the injuries suffered against the Fidelity & Casualty Company, defendant, which it is admitted had assumed all the obligations of the Union Sulphur Company to its employees under the Employers' Liability Act of this state (Act No. 20 of 1914 as amended).

The district court first rendered judgment in plaintiff's favor of the amount claimed, and, on a new trial, reversed itself, rejecting the demand.

Plaintiff prosecutes this appeal from the second judgment.

In 1929 plaintiff applied to the Vacuum Oil Company for work, and, as was required by its rules, was examined by Dr. Holcombe, the physician of that company, who testifies that, after examining plaintiff, he found that he then had a well-developed left inguinal hernia which was complete, and plaintiff was refused employment in that company.

In May, 1932, a short while after May 17th, the date plaintiff alleges he suffered the hernia while then working for the Union Sulphur Company, he was examined for that company by Dr. Watkins, its regular physician.

This physician testifies that plaintiff had then a hernia on his left side, and that it was an old one. He also found that plaintiff had a large congenital ring on the right side which indicated a potential hernia and advised an operation on both sides. The operation was performed also on the right side, which Dr. Watkins explained was done as a preventive measure for the future. He further explains that you cannot, from an examination, say whether the hernia is old or recent, but that, after you have operated on the patient, you have then a "very clear idea," and can tell that the hernia is old or new.

Plaintiff admits that, after the examination in 1929, Dr. Holcombe told him he had a hernia, and that the Vacuum Oil Company refused to keep him in its service as an employee. Plaintiff says, however, that he did not believe he had a hernia, although Dr. Holcombe so stated.

As Dr. Watkins found that plaintiff had a hernia on the left side in May, 1932, there can be no doubt that it was the hernia which Dr. Holcombe had located on the same side in 1929.

It is shown that, after the Vacuum Oil Company refused to keep plaintiff as its employee, he was employed by the Union Sul- phur Company for which he was working in May, 1932. It is evident that he was suffering with that trouble when he entered into the service of that company, and hence did not sustain the hernia on May 17, 1932, as it is by him alleged.

The allegation of the plaintiff is that he sustained the hernia while he was handling an iron drill collar. His testimony is that, as he made an effort to grab it, he suffered the injury. Although he alleged that he had then sustained the hernia, the issue presented for determination revolves around the proposition as to whether or not his condition had been aggravated by the strain to which he had been subjected in his attempt to lift this iron drill collar.

Plaintiff testifies that, when he pulled on this collar, which weighed about 375 pounds, he felt a pain like a needle sticking in his left and right sides; that he walked off, sat down for ten or fifteen minutes, thought he had a cramp in the stomach but which would soon pass off. He rested there a while, went back to his work for the rest of the night, suffering pain all night.

It appears that Mr. John Trump was a fellow workman on the derrick and was helping plaintiff in handling the drill collar at the time plaintiff says he was hurt. It is shown, however, that neither Mr. Trump, his helper, nor Mr. Burleson, the driller who was a few feet then from where the collar was pulled by plaintiff, ever noticed that he had walked away or sat down, as he says he did. Neither Mr. Trump nor Mr. Burleson, the driller, heard any expression from plaintiff indicating he had been injured or suffered any pain at that time, nor did plaintiff tell either of them about suffering any injury when he returned to work on the derrick, if in fact he had temporarily absented himself and returned to his work, as was testified to by him.

Plaintiff continued two days thereafter to work on the derrick, rendering his customary services and without mentioning either to Mr. Burleson, the driller, nor to his helper, Mr. Trump, that he had been injured. About three days after the incident detailed by plaintiff, he made a report of the injury he claims to have suffered to Mr. Burleson, the driller, who sent him to Mr. Scott, who brought him over to see Dr. Watkins, the physician of the Union Sulphur Company, by whom plaintiff was examined, with the result hereinabove stated.

Neither Mr. Trump nor Mr. Burleson, both of whom were working on the derrick with plaintiff at the time of his alleged injury, had any intimation whatsoever of such injury, until plaintiff made this report to Mr. Burleson about three days after the alleged incident. These two witnesses, it is true, remembered when plaintiff made a grab at the

drilling collar at the time stated by him, but that was all they remembered of this incident, to which the driller says he paid little attention, as it is not an unusual happening in the day's work around a derrick.

It is indeed singular, if plaintiff suffered an aggravation of his old hernia on that occasion, as claimed by him, that he said nothing about it to his fellow workmen on the derrick, did not give the least manifestation of pain or suffering from injury, continued working as usual during the whole of that night, returned to his work for a couple of days thereafter without complaint, rendering his usual services. It is impossible from such conduct on his part to infer that plaintiff had suffered an accident of the nature complained of.

The only proof that the court could rely upon to solve this question would have to depend on the testimony of the plaintiff, and, if possible, with corroboration of his evidence by facts or circumstances gathered from the record.

It will be seen from the opinion of the district judge given on the new trial that he entertained grave doubts as to the truthfulness of the statement made by plaintiff in reference to the aggravation of his condition, and that he found no corroborative evidence to support that statement. In referring to this lack of corroboration, the court referred to the fact, strenuously emphasized by counsel for plaintiff, that the evidence showed that plaintiff had for two years performed hard work for the Union Sulphur Company, and that his hernial condition had not been interfered with during that period of time. In reference thereto, the court said that several of the physicians who testified in the case had stated that men frequently work under such conditions "with little apparent inconvenience."

Dr. Watkins, the record shows, said, it must be said on this subject, that men work all of their lives with hernias.

In connection with the foregoing statement by the district judge, he also said: "It is shown moreover, that he did the same character of work for three nights after the alleged accident, without apparent inconvenience."

We think, with the trial court, that the facts and circumstances to which the court refers give no support or corroboration to the testimony of the plaintiff in reference to the occurrence.

On being questioned about an unusual strain causing a noticeable pain, Dr. Watkins explained that the suffering would not necessarily mean that the hernia had been made "any worse." It would simply indicate, he says, that the person experienced the pain because he had the hernia.

Asked by counsel for plaintiff if the chances were not that there had been additional injury (which has reference to the hernia as appears from the preceding questions and answers), Dr. Watkins answered as follows:

"The only pain would be the pain of stretching. There was nothing in this individual case except there was a sac, that was all. There was nothing—no emergency about it—no violence. No unusual conditions about it."

This testimony from the physician who performed the operation on plaintiff that there appeared no violence or unusual conditions existing is rather persuasive. He stated further that the ring had not been recently torn, upon which he had advised an operation as a preventive measure for the future, as hereinabove referred to.

It therefore appears from the testimony of Dr. Watkins, and of which there is no contradiction, that no unusual condition, indicating violence, etc., showed any aggravation of the old hernia or the prior condition under which plaintiff labored before the alleged accident of May 17, 1932. Such being the situation, no facts or circumstances, as reflected by this record, can be gathered to corroborate the testimony of the plaintiff on the vital issue presented, and for the proof of which plaintiff must rely on his own testimony.

Plaintiff was asked the direct question as to whether, when he went for examination to Dr. Watkins, that he had told the doctor he had never had a hernia. He answered he had not.

Dr. Watkins swore that plaintiff had, when examined, told him that he had never had a hernia.

Mr. Scott testifies that he was present at the examination made by Dr. Watkins, and, upon a direct question asked plaintiff on this subject, that plaintiff had answered he had never suffered with a hernia before May 17th, which meant prior to his alleged injury.

Mr. Avery Perkins testified that in 1929 he was an employee of the Vacuum Oil Company; that plaintiff did not show up for examination and told him he could not pass, said that he had a hernia; and, it may be remarked, it is not improbable he might have so stated, as it is shown by Dr. Watkins that plaintiff had a hernia at that time.

It was also testified to by Trump, plaintiff's fellow workman, that before the alleged accident plaintiff told him he was suffering with a pain on his left side.

Plaintiff denied that he had made such statements to the witnesses above referred to, but it is evident that the court did not rely on this denial; and, as plaintiff had to depend for recovery on his uncorroborated

testimony, the court reversed its first judgment and dismissed the suit. .

It is impossible to say, under the facts of this case, that the lower court has fallen into a manifest error in so holding, so as to authorize a reversal.

The second judgment rendered below is therefore affirmed, with cost.

### ELLIOTT, Judge (dissenting).

The evidence shows that the plaintiff, George Khoury, was examined by Dr. Holcombe in the interest of the Vacuum Oil Company and found to have a developed hernia on one side. As a result of Dr. Holcombe's finding, Khoury was not given employment by Vacuum Oil Company, but he soon afterwards sought and was given employment by Union Sulphur Company, without an examination. After having been employed by Union Sulphur Company, he worked continuously at any work assigned him, shirking nothing and giving satisfaction until overcome by his condition, about two years after being employed.

I agree with the majority of the court and with the lower court that the evidence does not support the averments in plaintiff's petition that he received a traumatic hernia at the time and place alleged in his petition. My conclusion is, however, that plaintiff's two years of arduous labor for Union Sulphur Company gradually, and without causing him serious pain, caused the hernia he already had to enlarge and grow, and also caused another to form on the opposite side. I think the testimony showed on the present trial, and on a previous occasion we found, that men with hernia have done manual labor for years and that it does not always disable; it depends, etc.

In this instance, the evidence shows that the hernia which Dr. Holcombe found Khoury to have did not disable him, nor incapacitate him as to arduous manual labor, because he is shown to have performed that kind of labor for Union Sulphur Company for two years, but his labor for that period of time for Union Sulphur Company has reduced a man fully capable at the time he commenced working for it to a state of incapacity to do work of any reasonable character.

Defendants contend that Khoury concealed from them, at the time he was employed, the fact that he had hernia and that he in that way obtained some compensation and an operation, to which he was not entitled, etc.

I do not see that Khoury was called on to voluntarily inform officers of Union Sulphur Company, at the time he sought employment, that he had a hernia when the hernia did not interfere with the service he was due to render. He could not foresee any more than the defendants could have done that it would ultimately do so. When he was examined by physicians for Union Sulphur Company, he was found to have a hernia on each side of the hernial area; and, acting under the advice of defendant's physicians, he underwent an operation on that account. It was held out to him that the operation would correct his condition, and that he would be able to return to work; but the operation resulted in the formation of a hydrocele on the left side which is as incapacitating as the hernia. The evidence shows that this hydrocele will not get well, unless it is overcome by another operation.

The operation on account of the hydrocele, if submitted to, will be serious. And it may remove the trouble, but it might not. There is in fact a possibility, according to the evidence, that his condition might be made worse by an operation. An injured employee is not obliged to undergo such a serious operation as an operation for hydrocele in this case will be as a prerequisite to claiming compensation on account of his injury.

As I see the situation the plaintiff, Khoury, entered the service of the Union Sulphur Company, with a hernia on one side that did not hinder him from performing arduous manual labor. He rendered continuous and satisfactory service for about two years. During his period of service his existing hernia gradually enlarged and another one formed on the other side, so that he became, while in the service of the defendants, as a result of his arduous service, a permanent total disability to do work of any reasonable character. After the operation, he was permitted to return to work, and worked for about eight days, after which he was discharged. Defendant's reasons for discharging him, was that it was done in the interest of economy, but it seems to me that the economic situation at the time he returned to work must have been known to the defendant as well as eight days thereafter. I therefore conclude that defendant thought it well to let him work a few days and then let him go, because it understood that he was really permanently and totally disabled as a result of his physical condition brought on in their service. I therefore dissent, and contend that the judgment appealed from should be set aside and judgment rendered in favor of the plaintiff as prayed for in his petition.